UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MARTIN DOHERTY**,

          Plaintiff,

          v.

**TURNER BROADCASTING SYSTEM, INC.**,

          Defendant.

Case No. 1:20-cv-00134 (TNM)

## MEMORANDUM OPINION & ORDER

Plaintiff Martin Doherty, proceeding *pro se*, filed a second amended complaint against his former employer, Turner Broadcasting System, Inc. ("Turner"). He raises several claims under federal and D.C. law, alleging mainly that Turner submitted false information to the Internal Revenue Service. Turner filed an answer to Doherty's federal-law claim. Before the Court is Turner's motion to dismiss Doherty's remaining D.C. law claims. For the reasons explained below, the Court will grant the motion.

### I.

### A.

Before bringing this suit, Doherty twice sued his previous employer.[1] In the first suit, Doherty filed a ten-count complaint against Cable News Network ("CNN"). *See* First Am.

---

[1] In the prior cases, Doherty's surname was spelled "Dougherty." *See, e.g.*, First Am. Compl. ("*Doherty I* Compl.") at 1, *Dougherty v. Cable News Network*, No. 17-cv-00769-RC (D.D.C. filed July 7, 2017) ("*Doherty I*"), ECF No. 10. Earlier in this litigation, as well, Turner asserted that the correct spelling was "Dougherty." Def.'s Mot. to Dismiss First Am. Compl. at 1 n.1, ECF No. 16. The Court calls the Plaintiff "Martin Doherty," though, as that is how he has referred to himself before the Court.

Compl. ("*Doherty I* Compl.") at 1, *Dougherty v. Cable News Network*, No. 17-cv-00769-RC (D.D.C. filed July 7, 2017) ("*Doherty I*"), ECF No. 10.[2]  As relevant here, Doherty raised claims of discrimination and retaliation under the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq*.  *Doherty I* Compl. at 17–20.  The claims stemmed from a knee injury that Doherty suffered while working as a photojournalist.  *Id.* at 2.  He argued that CNN "discriminated against [him] on the basis of his disability by treating him differently from and less preferably then [*sic*] similarly situated employees outside of [his] protected class."  *Id.* at 17; *see also id.* at 20–21 (also raising a claim of age discrimination under the DCHRA).  In support of his retaliation claim, Doherty asserted that he "engaged in protected activities" under the DCHRA and Turner subjected him to "adverse employment actions," including his ultimate termination in March 2016.  *Id.* at 2, 20.

In the second suit, Doherty also alleged DCHRA violations.  He argued that CNN continued to retaliate against him after his firing.  First Am. Compl. ("*Doherty II* Compl.") at 1, *Doherty v. CNN America, Inc.*, No. 20-cv-00567-RC (D.D.C. filed March 20, 2020) ("*Doherty II*"), ECF No. 7.  He claimed that he "continue[d] to engage in protected activities," including by participating in the *Doherty I* suit, and was subject to the "adverse employment action[]" of being denied the opportunity to obtain other employment with CNN "despite his more than 50 applications."  *Id.* at 1, 6, 8.

In June 2020, Doherty and CNN filed joint stipulations of dismissal with prejudice in both cases.  *See* Joint Stipulation of Dismissal with Prejudice ("*Doherty I* Joint Stipulation"),

---

[2]  All page citations refer to the page numbers that the CM/ECF system generates.

2

*Doherty I*, ECF No. 66; Joint Stipulation of Dismissal with Prejudice ("*Doherty II* Joint Stipulation"), *Doherty II*, ECF No. 16.[3]

**B.**

The present litigation began when Doherty sued in the Superior Court for the District of Columbia. Turner removed the action here. *See* Notice of Removal, ECF No. 1. The Court denied Doherty's motion to remand the case to Superior Court and granted Doherty leave to file his first amended complaint. 4/20/2020 Mem. Order at 3, ECF No. 14. Turner's motion to dismiss that complaint was granted in part and denied in part. See 6/22/2020 Mem. Order at 11, ECF No. 20.

Doherty filed a second amended complaint—the operative one here. Second Am. Compl., ECF No. 24. He raises claims under 26 U.S.C. § 7434 (Count I), as well as the DCHRA and the D.C. Workers' Compensation Act ("DCWCA"), D.C. Code § 32-1501, *et seq.* (Count II). Second Am. Compl. at 4–10. Doherty also alleges that Turner has violated § 32-1516(a) of the DCWCA in the way that it has administered its disability program (Count III). Second Am. Compl. at 10–11. His complaint centers on the allegation that Turner "willfully provided the [IRS] with false information returns." *Id.* at 3.

Turner answered Count I, *see* Answer, ECF No. 26, but moves to dismiss Counts II and III of Doherty's second amended complaint "for lack of subject matter jurisdiction and for failure

---

[3] Although Doherty is proceeding *pro se* here, he was represented by counsel in the first two suits. *See Doherty I* Joint Stipulation at 2 (signed by Doherty's attorney); *Doherty II* Joint Stipulation at 2 (same).

3

to state a claim," Def.'s Partial Mot. to Dismiss, ECF No. 25; Def.'s Mem. Supp. Partial Mot. to Dismiss ("Def.'s Mem.") at 5, ECF No. 25-1. The motion is ripe for disposition.[4]

## II.

Turner argues that Doherty's claims should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mem. at 5. A plaintiff must establish the Court's jurisdiction over his claims to survive a Rule 12(b)(1) motion. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). In deciding this motion, the Court "may consider materials outside the pleadings." *DePolo v. Ciraolo-Klepper*, 197 F. Supp. 3d 186, 189 (D.D.C. 2016).

Rule 12(b)(6) places a less onerous standard on plaintiffs than Rule 12(b)(1). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court considers only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Hurd*, 864 F.3d at 678 (cleaned up). The Court treats as

---

[4] The Court has federal-question jurisdiction over Doherty's federal claim that is not the subject of this motion to dismiss, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over his D.C. claims, *see id.* § 1367(a).

true the complaint's factual allegations and grants the plaintiff "all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). The Court need not, however credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).

Doherty is proceeding *pro se*. Thus, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (cleaned up). "But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The Court also must consider a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152 (cleaned up).

## III.

Two counts of Doherty's complaint are the subject of Turner's motion to dismiss: (A) Count II, which raises claims under the DCHRA and DCWCA, and (B) Count III, which alleges a separate violation of the DCWCA. For the reasons explained below, the Court agrees with Turner that these counts should be dismissed.

### A.

In Count II, Doherty raises claims under (1) the DCHRA and (2) the DCWCA. The Court considers each set of claims.

#### 1.

The Court construes Doherty's complaint as raising discrimination and retaliation claims under the DCHRA. *See* Second Am. Compl. at 8. Turner contends that Doherty's DCHRA

claims should be dismissed on several grounds, including that they are barred by res judicata. *See* Def.'s Mem. at 21.  The Court agrees.

The doctrine of res judicata, also known as "claim preclusion," "holds that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (cleaned up).  When considering whether res judicata applies, the Court considers four elements: "(1) an identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action." *Tembec Inc. v. United States*, 570 F. Supp. 2d 137, 140–41 (D.D.C. 2008).  All four elements are met here.

*First*, there is an identity of parties.  Turner contends—and Doherty does not appear to dispute—that Turner is in privity with the defendants in the prior lawsuits, CNN and CNN America.  *See* Def.'s Mem. at 17; *cf. Peek v. SunTrust Bank, Inc.*, 313 F. Supp. 3d 201, 205 (D.D.C. 2018) ("two entities [were] in privity with each other" where the first suit was brought against "a wholly-owned subsidiary" of the defendant in the later suit).  *Second*, this Court, which dismissed with prejudice Doherty's prior cases, was a court of competent jurisdiction.  *Cf. id.* at 205 n.3 (finding that the "U.S. District Court for the Eastern District of Virginia is clearly a court of competent jurisdiction" and noting that the plaintiff made "no argument to the contrary").

*Third*, each of the stipulations of dismissal with prejudice in Doherty's two prior suits constitutes a final judgment on the merits.  *See, e.g.*, *Burns v. Fincke*, 197 F.2d 165, 166 (D.C. Cir. 1952) ("Since the stipulation provides for dismissal with prejudice, the first action is res judicata of the matters covered by the cause of action and counterclaim therein."); *Citibank v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) (explaining that a district court's

order dismissing a complaint "with prejudice, entered by stipulation of the parties," constitutes "a final judgment on the merits" (cleaned up)). Thus, those stipulations "bar[] future suits based on the same cause[s] of action." *Tembec*, 570 F. Supp. 2d at 141.

*Fourth*, there is an identity of the causes of action between this case and Doherty's prior cases. Doherty gives more content to his DCHRA claims in his opposition. There, he references his "work injury" and explains that "disability is a protected trait." Pl.'s Opp'n to Partial Mot. to Dismiss ("Pl.'s Opp'n") at 12, ECF No. 28. For support, he states that Turner denied two "ADA request[s]" and "retaliated against him by not letting him return to full employment until he was 100 percent healed."[5] *Id.* at 12–13.

Doherty's DCHRA claims arise from the same set of facts that was raised in his prior cases. *See Drake*, 291 F.3d at 66 ("Whether two cases implicate the same cause of action turns

---

[5] Doherty suggests that he provides these facts "for context and to show that" Turner was "well aware of the background of Plaintiff's ADA requests and protected traits under the DCHRA." Pl.'s Opp'n at 13. But Doherty also states that he raises these facts in response to Turner's argument that Doherty "offer[ed] no facts as to retaliation or what protected trait he possesses." *Id.* at 12. The Court thus construes Doherty's opposition as supplementing facts in support of his DCHRA claims. *See Brown*, 789 F.3d at 152 (explaining that a *pro se* plaintiff may "supplement his complaint with the allegations included in his opposition"). Even if the Court disregarded these facts, dismissal would still be appropriate. Besides these facts alleging a disability, Doherty does not provide the Court with other allegations that he is a member of a protected class. *See* Def.'s Reply in Supp. of Partial Mot. to Dismiss ("Def.'s Reply") at 15, ECF No. 29. Thus, his DCHRA discrimination claim would have to be dismissed. *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 152 (D.D.C. 2014) ("To adequately plead discriminatory treatment under the DCHRA, . . . Plaintiff must establish that: (1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."). Doherty's DCHRA retaliation claim would likewise have to be dismissed for failure to allege that he engaged in protected activity under the DCHRA. *See Ingram v. D.C. Child & Family Servs. Agency*, 394 F. Supp. 3d 119, 125 (D.D.C. 2019) ("To make a *prima facie* case of retaliation under the DCHRA, a plaintiff must . . . allege (1) that [he] engaged in protected activity; (2) that [he] was subjected to adverse action by the employer; and (3) that there existed a causal link between the adverse action and the protected activity." (cleaned up)).

on whether they share the same nucleus of facts." (cleaned up)).  The work-related injury that Doherty relies on as the basis for his claim of a protected trait here, his disability, undergirded his prior lawsuits.  *See Doherty I* Compl. at 2 (describing a "left knee patellar dislocation with effusion" as his "work related injury"); *Doherty II* Compl. at 3 (same).  He likewise claimed in both previous cases that he was not properly accommodated after this injury.  *See Doherty I* Compl. at 9–10 (recounting requests for accommodations); *id.* at 18–19 (raising a failure-to-accommodate claim under the DCHRA, arguing that "CNN failed to accommodate [Doherty's] disability" or "determine an appropriate and reasonable accommodation as required under the ADAA and the District's disability laws"); *Doherty II* Compl. at 4 (alleging that "CNN denie[d] [Doherty] all accommodations under the DCHRA . . . only to then terminate him in March 2016").

The Court thus dismisses Doherty's DCHRA claims in Count II as barred by res judicata.

**2.**

Next, consider Doherty's DCWCA retaliation claims.  The Court construes Doherty's complaint as alleging that Turner retaliated against him in three ways: (1) refusing to issue workers' compensation documents and correct W2s; (2) causing "the IRS [to] fil[e] a financial lien against" him; and (3) "retaliatorily discharg[ing] [him] in March 2016."  Second Am. Compl. at 7–8; *see also* Pl.'s Opp'n at 17–18.  In his opposition, Doherty seeks to bolster his retaliation claim by alleging additional instances of retaliation: (1) that Turner "prevent[ed] him from returning to work once his treating Doctor released him back to work in February 2016"; (2) that he "never received a call back or interview" despite "appl[ying] for over 100 other jobs with" Turner; and (3) that he was terminated in March 2019.  Pl.'s Opp'n at 17–20.

Turner argues that the DCWCA claims should be dismissed for several reasons. It contends that, if Doherty seeks to rely on his 2016 termination, Turner's failure to accommodate him, and its subsequent refusal to re-hire him, Doherty could have litigated claims arising from those facts in his prior lawsuits. *See* Def.'s Mem. at 16–18; Def.'s Reply in Supp. of Partial Mot. to Dismiss ("Def.'s Reply") at 9–12, ECF No. 29. Turner also asserts that Doherty has otherwise failed to state a claim of retaliation. *See* Def.'s Mem. at 13–15. The Court agrees.[6]

To begin, any retaliation claim arising from Turner's alleged failure to accommodate Doherty, his 2016 termination, or Turner's subsequent refusal to re-hire him is barred by res

---

[6] Turner also argues that the Court lacks jurisdiction to hear Doherty's DCWCA claims because Doherty failed to properly exhaust them and, even if he did, "he could raise such claims before only the D.C. Court of Appeals for judicial review." *See* Def.'s Mem. at 11–13. If Doherty raises any claims for workers' compensation benefits, Turner is likely correct. *See Tiffer v. Nobu DC LLC*, No. 19-7126, 2020 WL 2610915, at *1 (D.C. Cir. Apr. 21, 2020) ("The district court properly dismissed the case, because it lacked jurisdiction to review the decision denying appellant's application for workers' compensation benefits." (citing D.C. Code § 32-1522)). But the Court construes Doherty's complaint as raising a DCWCA retaliation claim, not a claim for workers' compensation benefits. *See, e.g.*, Second Am. Compl. at 7–9; *see also* D.C. Code § 32-1542 (making it "unlawful for any employer . . . to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer"). And it is unclear whether DCWCA retaliation claims must also be exhausted. The case that Turner relies on suggests this is so. *See Lytes v. D.C. Water & Sewer Auth.*, No. 05-cv-0402-RMC, 2006 WL 890005, at *7 (D.D.C. Mar. 30, 2006) (dismissing a retaliation claim "because the [DCWCA] provides the exclusive remedy for alleged retaliation and [the plaintiff] ha[d] not pursued his administrative remedies under the Act"). But *Lytes* dealt only with the plaintiff's inability to bring a common-law retaliation claim because the DCWCA was the plaintiff's exclusive remedy. *See id.* The court cited no caselaw for its suggestion that exhaustion is also required. *See id.* More, other courts in this district have entertained DCWCA retaliation claims. *See, e.g.*, *Smith-Haynie v. U.S. Veterans Initiative*, No. 17-cv-2824-TSC, 2020 WL 2838605, at *1 (D.D.C. June 1, 2020). So the Court finds that this is an undecided question and one that it need not reach because it is not clearly jurisdictional. *Cf. Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction)"); *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) ("We presume exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." (cleaned up)).

judicata. Although Doherty did not explicitly raise DCWCA retaliation claims in his prior cases, *see* Pl.'s Opp'n at 20, "[t]wo claims need not be literally identical claims for res judicata to apply," *Peek*, 313 F. Supp. 3d at 205 (cleaned up). "Rather, the facts surrounding the transaction or occurrence operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Id.* (cleaned up).

Insofar as Doherty alleges retaliation based on Turner's failure to accommodate him, his 2016 discharge, and Turner not hiring him afterward, these facts formed the factual basis of the prior lawsuits. *See, e.g.*, *Doherty I* Compl. at 9–10 (alleging that he requested an accommodation after a doctor "clear[ed] him for light duty" in February 2016); *id.* at 20 (claiming his termination was retaliatory); *Doherty II* Compl. at 7 (claiming retaliation because Doherty's applications for other jobs at CNN, after his 2016 termination, were "summarily denied"). Thus, there is "an identity of the cause of action."[7] *Tembec*, 570 F. Supp. 2d at 141. Res judicata bars these facts from forming the basis of new retaliation claims here. *See Cornish v. United States*, 885 F. Supp. 2d 198, 208 (D.D.C. 2012) ("A cause of action, for purposes of res judicata, comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." (cleaned up)).

Although Doherty's opposition brief for the first time suggests he was terminated in March *2019*, *see, e.g.*, Pl.'s Opp'n at 19, the Court rejects Doherty's attempt to amend his complaint in this way. While a court must consider all of a *pro se* plaintiff's allegations, including those in an opposition brief, *see Brown*, 789 F.3d at 152, Doherty's claim that he was

---

[7] The analysis in the DCHRA section related to the first three elements of res judicata—"an identity of parties," "a judgment from a court of competent jurisdiction," and "a final judgment on the merits," *see Tembec*, 570 F. Supp. 2d at 140–41—applies equally here.

10

fired in March 2019 does not just add another allegation to consider; it directly contradicts the allegations in his complaint that he was fired in March 2016, *see* Second Am. Compl. at 7. This he cannot do. In *Henthorn v. Department of Navy*, the D.C. Circuit rejected a *pro se* plaintiff's argument that "where the facts alleged in [his] complaint [were] contradicted by facts alleged in his brief in opposition to the [defendant's] 12(b)(6) motion . . . the Court [was] bound to accept the version of the facts most favorable to him." 29 F.3d 682, 687 (D.C. Cir. 1994). The Circuit explained that although a *pro se* plaintiff "may further develop his claim in his brief in opposition," he cannot "allege additional facts that contradict the pleadings." *Id.* (cleaned up); *see also Sai v Transp. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018) ("It is axiomatic . . . that a party may not amend his complaint through an opposition brief." (cleaned up)).

This case is different than, for example, *Brown*. There, the D.C. Circuit held that the defendant would not be prejudiced by allowing the plaintiff to "*supplement* his complaint with the allegations included in his opposition." *Brown*, 789 F.3d at 152 (emphasis added). The plaintiff had "filed a separate amendment to his complaint, which amendment the district court [had] allowed," along with the opposition brief. *Id.* Here, however, Doherty's assertions in his opposition do not supplement, but contradict, those in his complaint. *Cf. Henthorn*, 29 F.3d at 687. The proper method for Doherty to substitute the new date of his firing was to amend his complaint.

That leaves two alleged instances of retaliation—(1) Turner's refusal to issue workers' compensation documents and correct W2s, and (2) Turner causing the IRS to issue a lien against Doherty. "To state a retaliation claim, a plaintiff must plead that [he] engaged in statutorily protected activity and suffered adverse treatment because of that protected activity." *Smith-Haynie v. U.S. Veterans Initiative*, No. 17-cv-2824-TSC, 2020 WL 2838605, at *5 (D.D.C. June

11

1, 2020) (analyzing a retaliation claim under, among other statues, the DCWCA); *see also Lyles v. D.C. Dep't of Emp. Servs.*, 572 A.2d 81, 83 (D.C. 1990) (stating the elements of a DCWCA retaliation claim). Turner contends that Doherty's claims should be dismissed because he has not alleged a causal connection or adverse actions. *See* Def.'s Mem. at 13–15.

As to Turner's refusal to issue workers' compensation documents and correct W2s, Doherty has not alleged a causal connection because this alleged adverse action occurred before the protected activity that Doherty alleges. Doherty asserts that he suffered "compensable injuries under the Act" (seemingly referring to the DCWCA) in 2008, 2009, 2013, 2014, and 2016. Second Am. Compl. at 2. It was in these years when Turner allegedly submitted false returns and injured him by failing to issue workers' compensation documents. *See id.* at 2–3, 8–9. But the alleged protected activities—*i.e.*, Doherty testifying "during a Formal Hearing with DOES [D.C. Department of Employment Services]" and making "written inquiries" with the agency—occurred "in the spring/Summer of 2016" and in "December 2017 and January 2018," respectively. *Id.* at 8–9. Even taking his facts as true, it is nonsensical to suggest that retaliation preceded protected activity.[8] *Cf. Rucker v. Architect of the Capitol*, 869 F. Supp. 2d 88, 95 (D.D.C. 2012) (explaining that the plaintiff could not "credibly argue that her placement on leave restriction was causally connected to her second complaint, because she was placed on leave restriction two years *before* that complaint was made").

---

[8] Doherty suggests in his opposition that there is no causation issue because he "has been asking DOES for Defendant's compliance with DCWCA since October 2013." Pl.'s Opp'n at 18–19. Even if the Court were to consider this information as supplementing, rather than conflicting with, Doherty's complaint, the Court agrees with Turner that it does not constitute protected activity. *See* Def.'s Reply at 13 n.4; *see also* D.C. Code § 32-1542 (prohibiting employers from retaliating against an employee because the employee "has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter").

Next, consider Doherty's allegation about the IRS lien. The Court agrees with Turner that the lien cannot constitute an allegation of adverse action against Turner because, as Doherty says, it was the IRS (not Turner) that issued the lien. *See* Def.'s Mem. at 14. Even if Doherty takes issue with Turner providing "false information" to the IRS, Second Am. Compl. at 7, which purportedly caused the lien, that conduct is subsumed within Count I of Doherty's complaint, *see id.* at 4 (alleging in Count I that "Defendant willfully filed fraudulent information returns with the IRS"). That count is not a subject of this motion to dismiss.

The Court therefore will dismiss Doherty's DCWCA retaliation claims.

## B.

In Count III, Doherty contends that Turner has violated D.C. Code § 32-1516(a) because "they had [him] contribute to the long-term disability program through an imputed tax deduction from [his] regular paycheck." Second Am. Compl. at 11. That provision of the D.C. Code, located in the DCWCA, provides:

> No agreement by an employee to pay any portion of premium paid by his employer to a carrier or to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or medical services and supplies as required by this chapter shall be valid, and any employer who makes a deduction for such purpose or any employee entitled to the benefits of this chapter shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $1,000.

D.C. Code § 32-1516(a). Doherty's claims under this provision will be dismissed because the provision does not confer a private right of action.

The text of this provision does not expressly provide for a private cause of action. Neither can one be implied. "[T]o determine whether a D.C. statute creates an implied private right of action," courts consider three factors: (1) whether "the plaintiff one of the class for whose *especial* benefit the statute was enacted"; (2) whether there is "any indication of

13

legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether "imply[ing] such a remedy for the plaintiff" is "consistent with the underlying purposes of the legislative scheme." *Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 744 (D.C. Cir. 1998) (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

"The ultimate issue is whether the legislature intended to create a particular cause of action, because unless such legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 226 (D.D.C. 2010) (quoting *Coates v. Elzie,* 768 A.2d 997, 1001 (D.C. 2001)); *see also Dial A Car*, 132 F.3d at 744 (stating that "the most important consideration is whether the legislature intended to create a private right of action"). And "a plaintiff bears a relatively heavy burden of demonstrating" legislative intent. *Samuels v. District of Columbia*, 770 F.2d 184, 194 (D.C. Cir. 1985); *see also Seth v. District of Columbia*, No. 18-cv-1034-BAH, 2018 WL 4682023, at *16 (D.D.C. Sept. 28, 2018) (quoting *Samuels* when analyzing a D.C. statute).

Here, legislative intent, the "ultimate issue," is dispositive. The text and structure of D.C. Code § 32-1516(a) shows no intent to provide an implied cause of action. It is a statutory prohibition on contracting, stating that an agreement with particular features will not "be valid." D.C. Code § 32-1516(a). The provision also creates a penalty, providing that those who violate the statute "shall be guilty of a misdemeanor" and punished by a $1,000 fine "upon conviction." *Id.* The Court cannot conclude that this criminal provision was intended to create a private right

or a private remedy.⁹ Thus, "the essential predicate for implication of a private remedy simply does not exist." *Baumann*, 744 F. Supp. 2d at 226 (cleaned up).

For these reasons, the Court dismisses Count III.¹⁰

\*   \*   \*

In sum, the Court determines that Doherty's DCHRA claims are barred by res judicata. When Doherty's DCWCA retaliation claims rely on the facts adjudicated in his prior lawsuits, they are barred by res judicata, as well. The balance of Doherty's DCWCA retaliation claims fail to allege either a causal connection or an adverse action. Doherty's final count is also untenable because the D.C. provision he tries to sue under contains no express or implied private cause of action.¹¹

---

⁹ The Court has located several cases citing D.C. Code § 32-1516, but most reference sub-section (b), which provides that "[n]o agreement by an employee to waive his right to compensation under this chapter shall be valid." D.C. Code § 32-1516(b). And in those cases, "the statute did not form the basis for the cause of action." *Tyler v. Uber Techs., Inc.*, No. 19-cv-3492-ABJ, 2020 WL 5569946, at *7 n.9 (D.D.C. Sept. 17, 2020) (referencing cases referring to a different provision of the D.C. Code). Instead, the plaintiffs argued that a contract was invalid because of the statutory prohibition found in sub-section (b). *See, e.g.*, *Brown v. 1301 K St. Ltd. P'ship*, 31 A.3d 902, 905 (D.C. 2011) (arguing that a disclaimer was invalid because it violated § 32-156(b)).

¹⁰ If Doherty raises claims under § 32-1516(a) elsewhere in his complaint besides Count III, *see, e.g.*, Second Am. Compl. at 9 (arguing that Turner's "violation of § 32-1516 caused them to provide the false information returns to the [IRS]"), they are dismissed for the same reasons.

¹¹ Doherty moved to file a sur-reply, *see* Pl.'s Mot. for Leave to File a Sealed Sur-Reply ("Pl.'s Mot. for Leave"), ECF No. 30, which Turner opposed, *see* Def.'s Mem. in Opp'n to Mot. for Leave to File Sur-reply, ECF No. 34. The Court will deny Doherty's motion. As relevant here, Doherty argues that the sur-reply is necessary mostly to respond to Turner's res judicata argument. *See* Pl.'s Mot. for Leave at 1–2. But Turner raised these arguments in its partial motion to dismiss. *See* Def.'s Mem. at 16–18, 21. And Doherty responded to them in his opposition brief. *See* Pl.'s Opp'n at 14, 20–21. Thus, a sur-reply is not warranted. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) ("The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." (cleaned up)). The prior settlement agreement that Doherty seeks to file along with his proposed sur-reply is also irrelevant to the Court's decision. What matters for the Court's res judicata analysis is

## IV.

For these reasons, it is hereby

**ORDERED** that the Defendant's Partial Motion to Dismiss, ECF No. 25, is GRANTED; it is further

**ORDERED** that the Plaintiff's Motion for Leave to File a Sealed Surreply, ECF No. 30, is DENIED.

**SO ORDERED**.

Dated: February 1, 2021                              TREVOR N. McFADDEN, U.S.D.J.

---

that Doherty filed two prior lawsuits and stipulated to the dismissal of both with prejudice. The Court notes that even if the Court had granted Doherty's motion for leave to file, nothing in Doherty's proposed sur-reply would have changed the outcome here.

16